CLERK US DISTRICT COURT
NORTHERN DIST. OF TX.
FILED

2017 AUG 28 AM 9: 43

DEPUTY CLERK_____

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## ABILENE DIVISION

| | |
|---|---|
| **RANDALL LYNN LONG,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | **No. 1:16-CV-0143-BL** |
| § | |
| **NANCY A. BERRYHILL,**[1] § | |
| **Acting Commissioner of Social Security,** § | |
| § | |
| **Defendant.** § | |

### REPORT AND RECOMMENDATION

Pursuant to 42 U. S. C. § 405(g), Plaintiff seeks judicial review of a decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.[2] *See* Compl. (doc. 1). The Commissioner has filed an answer, *see* Answer (doc. 6), and a certified copy of the transcript of the administrative proceedings, *see* SSA Admin. R. [hereinafter "R."] (doc. 8), including the hearing before the Administrative Law Judge ("ALJ"). The parties have briefed the issues. *See* Pl.'s Br. (doc. 12); Def.'s Br. (doc. 13). The United States District Judge referred the case to the undersigned pursuant to 28 U.S.C. § 636 and the parties have not consented to proceed before a United States Magistrate Judge. After considering the pleadings, briefs, and administrative record, the undersigned recommends that the Commissioner's decision be affirmed and directs the Clerk of Court to reassign the case to Senior District Judge Cummings.

---

[1]On January 20, 2017, Nancy A. Berryhill replaced Carolyn W. Colvin as the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), the Court automatically substitutes her as the named defendant.

[2]Title II governs disability insurance benefits. *See* 42 U.S.C. §§ 401-34. This recommendation will often refer to Plaintiff as Claimant, a designation used in social security cases.

# I. BACKGROUND

Plaintiff initially claimed disability due to a knee problem and blood clots. R. 168. On April 24, 2014, he filed an application for DIB alleging a January 3, 2013 onset of disability. R. 141-47. He had worked as a prison guard from 1989 through the onset date of his disability. R. 169. His date of last insured ("DLI") expires September 30, 2018. R. 16. Therefore, the most relevant time period for his application and the Court's review commenced in January 2013 and continues through September 2018.

The Commissioner denied the applications initially and on reconsideration. *See* R. 66-76. On October 30, 2015, Administrative Law Judge ("ALJ") Dan Dane held a hearing on Plaintiff's claim. *See* R. 36-48. On December 29, 2015, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled and was capable of performing work that existed in significant numbers in the national economy. R. 14-22. Applying the sequential, five-step analysis set out in the regulations (20 C.F.R. § 404.1520(a)(4))[3] the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. R. 16.

The ALJ next determined that Plaintiff had the following severe impairments: "status post right knee arthroscopy; deep venous thrombosis, right lower extremity; hypertension; and obesity." *Id.* Third, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of any impairment in the listings.[4] R. 16-17. The ALJ then deter-

---

[3]In March 2017, the Social Security Administration amended many regulations. However, the pertinent version for this case is the one in effect when the ALJ issued his decision. *See Young v. Berryhill*, No. 16-20786, 2017 WL 2312859, at *2 n.3 (5th Cir. May 26, 2017) (per curiam). Except to bring attention to the effective date of an amended provision, this recommendation will cite to the applicable version without parenthetical year information.

[4]Section 404.1525 explains the purpose and use of the listings of impairments.

mined that Plaintiff retained the residual functional capacity ("RFC")[5] to perform a limited range of light work as defined in 20 C.F.R. § 404.1567(b).[6] R. 17. In addition to the usual light-work requirements of lifting/carrying ten pounds frequently and twenty pounds occasionally, the ALJ also found that Plaintiff could stand/walk for four hours of an eight-hour workday and sit for more than six hours, but Plaintiff must be able to elevate his right leg six inches for five minutes per hour while sitting. *Id.* The ALJ assessed no environmental, postural, or mental restrictions. *See id.*

Based upon the RFC determination and testimony from a vocational expert ("VE") about the exertional demands and skill requirements of Plaintiff's prior job, the ALJ concluded that Plaintiff could not perform his past relevant work, but could perform a job that exists in significant numbers in the national economy. R. 20-21. The VE identified gate guard as a light job that would be available for a hypothetical person with an RFC consistent with that assessed for Plaintiff. *See* R. 21. At Step 5 of the evaluative sequence, the ALJ thus found that Plaintiff was not disabled within the

---

[5]Section 404.1545(a)(1) explains that a claimant's RFC "is the most [he or she] can still do despite [his or her] limitations." When a case proceeds before an ALJ, it is the ALJ's sole responsibility to assess the claimant's RFC. 20 C.F.R. § 404.1546(c). However, that assessment must be "based on all of the relevant medical and other evidence" of record. *Id.* § 404.1545(a)(3).

[6]The regulations address physical exertion requirements and explain:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). In general, light work "requires being on one's feet" for six hours of an eight-hour workday while "[s]itting may occur intermittently during the remaining time." Titles II and XVI: Determining Capability to Do Other Work – the Medical-Vocational Rules of Appendix 2, SSR 83-10 (PPS-101), 1983 WL 31251, at *5-6 (S.S.A. 1983).

meaning of the Social Security Act between January 3, 2013, and the date of the ALJ's decision. R. 21-22.

The Appeals Council denied review on May 27, 2016, because it "found no reason" to review the ALJ's decision. R. 1-3. The ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating that the Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

Plaintiff commenced this social security appeal on July 26, 2016. *See* Compl. He presents two issues for review, including a failure to properly weigh medical opinions of his treating physician. *See* Pl.'s Br. at 8-11.

## II. LEGAL STANDARD

In general,[7] a person is disabled within the meaning of the Social Security Act, when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002) (citing 20 C.F.R. § 404.1572(a)-(b)). To evaluate a disability claim, the Commissioner employs the previously mentioned

> five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an

---

[7]The Act provides an alternate definition of disability for blind individuals who are fifty-five years of age or older. *See* 42 U.S.C. § 423(d)(1)(B). This provision is inapplicable on the current facts.

impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.

*Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). If, at any step, the Commissioner determines that the claimant is or is "not disabled, the inquiry is terminated." *Id.* at 448. The Commissioner must assess the claimant's RFC before proceeding to Steps 4 and 5. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). For Steps 1 through 4, the claimant has the burden to show disability, but the Commissioner has the burden at Step 5 to "show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. If the Commissioner carries that Step 5 burden, "the burden shifts back to the claimant to rebut th[e] finding" that he or she can perform other work that is available in the national economy. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

"Judicial review of the Commissioner's decision to deny benefits is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards are applied." *Sun v. Colvin*, 793 F.3d 502, 508 (5th Cir. 2015) (quoting *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion' and constitutes 'more than a mere scintilla' but 'less than a preponderance' of evidence." *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (quoting *Newton*, 209 F.3d at 452). "In applying the substantial evidence standard, the court scrutinizes the record to determine whether such evidence is present, but may not reweigh the evidence or substitute its judgment for the Commissioner's." *Perez*, 415 F.3d at 461. The courts neither "try the questions *de novo*" nor substitute their "judgment for the Commissioner's, even if [they] believe the evidence weighs against the Commissioner's decision." *Masterson*, 309 F.3d at 272. The Commissioner resolves

conflicts of evidence. *Sun*, 793 F.3d at 508.

## III. ANALYSIS

This appeal raises two issues: (1) whether the ALJ properly considered medical opinions of

Claimant's treating physician when determining his RFC; and (2) whether the ALJ properly evalu-

ated Claimant's credibility. *See* Pl.'s Br. at 8-13.

### A. RFC Determination and Weight Given to Medical Evidence

Claimant contends that the ALJ failed to give proper consideration to opinions of his treating

physician, Les Benson, M.D. Pl.'s Br. at 8-11. When considering whether a claimant is disabled,

the Commissioner considers the medical evidence available, including medical opinions.[8] *See* 20

C.F.R. § 404.1527(b) (effective Aug. 24, 2012, to Mar. 26, 2017). Medical opinions may come from

treating sources (for example primary care physicians), non-treating sources (physicians who perform

a single examination of the claimant), or non-examining sources (a physician who reviews only the

claimant's medical record). *See generally* 20 C.F.R. § 404.1502 (effective June 13, 2011, to Mar.

26, 2017). The Fifth Circuit has "long held that ordinarily the opinions, diagnoses, and medical evi-

dence of a treating physician who is familiar with the claimant's injuries, treatments, and responses

should be accorded considerable weight in determining disability." *Greenspan v. Shalala*, 38 F.3d

232, 237 (5th Cir. 1994) (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)). Nevertheless,

---

[8]As explained to claimants: "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2) (effective Aug. 24, 2012, to Mar. 26, 2017). These regulations, however, reserve some issues to the Commissioner "because they are administrative findings that are dispositive of a case" – opinions on such issues do not constitute medical opinions under the regulation. *Id.* § 404.1527(d). Effective March 27, 2017, § 404.1527 sets out a two-tiered approach for applying the regulation: "For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply. For claims filed on or after March 27, 2017, the rules in § 404.1520c apply." Regardless, the pertinent version for this appeal remains the one in effect when the ALJ issued his decision. *See Young v. Berryhill*, No. 16-20786, 2017 WL 2312859, at *2 n.3 (5th Cir. May 26, 2017) (per curiam).

even opinions from a treating source are "far from conclusive," because ALJs have "the sole responsibility for determining the claimant's disability status." *Id.*; *accord Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994).

"After identifying relevant medical opinions of treating physicians, ALJs must determine whether any such opinion is entitled to controlling weight." *Bentley v. Colvin*, No. 3:13-CV-4238-P, 2015 WL 5836029, at *7 (N.D. Tex. Sept. 30, 2015) (citing 20 C.F.R. § 404.1527(c)(2) and its Title XVI counterpart, § 416.927(c)(2)). When identifying and considering relevant opinions, ALJs "must remember" that some medical records, such as medical source statements provided by a treating source, "may actually comprise separate medical opinions regarding diverse physical and mental functions, such as walking, lifting, seeing, and remembering instructions, and that it may be necessary to decide whether to adopt or not adopt each one." Titles II & XVI:  Med. Source Ops. on Issues Reserved to the Comm'r, SSR 96-5P, 1996 WL 374183, at *4 (S.S.A. July 2, 1996).

The regulations provide a six-factor detailed analysis to follow unless the ALJ gives "a treating source's opinion controlling weight." 20 C.F.R. § 404.1527(c)(1)-(6) (effective Aug. 24, 2012, to Mar. 26, 2017).[9] "When a treating source has given an opinion on the nature and severity of a patient's impairment, such opinion is entitled to controlling weight if it is (1) 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and (2) 'not inconsistent with' other substantial evidence." *Wilder v. Colvin*, No. 3:13-CV-3014-P, 2014 WL 2931884, at *3 (N.D.

---

[9]These factors are: (1) the examining relationship; (2) the treatment relationship, including the length of time the physician has treated the claimant, the frequency of examination by the physician, and the nature and extent of the treatment relationship; (3) support for the physician's opinions in the medical evidence of record; (4) consistency of the opinions with the record as a whole; (5) the specialization of the treating physician; and (6) any others factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c) (effective Aug. 24, 2012, to Mar. 26, 2017). Even with the recent regulatory amendments, these factors remain relevant for claims filed before March 27, 2017. *See* 20 C.F.R. § 404.1527(c) (effective Mar. 27, 2017). For claims filed on or after March 27, 2017, 20 C.F.R. § 404.1520c provides details on how the administration considers and articulates medical opinions and prior administrative medical findings.

Tex. June 30, 2014) (quoting *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000)); *accord* 20 C.F.R. § 404.1527(c)(2) (effective Aug. 24, 2012, to Mar. 26, 2017). Furthermore, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in [the regulations]." *Newton*, 209 F.3d at 453.

ALJs who find a treating source opinion not entitled to controlling weight must consider the six factors of § 404.1527(c) to properly assess the weight to give such opinions. *Id.* at 456. However, "*Newton* requires only that the ALJ 'consider' each of the [§ 404.1527(c)] factors and articulate good reasons for its decision to accept or reject the treating physician's opinion. The [ALJ] need not *recite* each factor as a litany in every case." *Jeffcoat v. Astrue*, No. 4:08-CV-672-A, 2010 WL 1685825, at *3 (N.D. Tex. April 23, 2010) (emphasis added); *accord Emery v. Astrue*, No. 7:07-CV-084-BD, 2008 WL 4279388, at *5 (N.D. Tex. Sept. 17, 2008); *Burk v. Astrue*, No. 3:07-CV-899-B, 2008 WL 4899232, at *4 (N.D. Tex. Nov. 12, 2008) (accepting recommendation of Mag. J.). *Newton*, furthermore, does not require the detailed analysis when "there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another." 209 F.3d at 458. Likewise, the detailed analysis under *Newton* is not necessary when the ALJ has weighed the treating physician's opinion against opinions of other treating or examining physicians who "have specific medical bases for a contrary opinion." *Id.*

The ALJ, as fact-finder, "has the sole responsibility for weighing evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). ALJs have considerable discretion in assigning weight to medical opinions and

may reject the opinion of a physician when the evidence supports a contrary conclusion. *Newton*, 209 F.3d at 455-56. Additionally, for good cause shown, an ALJ may assign little or no weight to an opinion from a treating source. *Id.* "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456.

On July 22, 2012, Claimant injured his knee on the job and had surgery on January 3, 2013. R. 223. Richard Haenke, D.O. performed the surgery. R. 233. He set out the following postoperative diagnosis: (1) radial tear of lateral meniscus of right knee, (2) traumatic chondromalacia, and (3) severe synovitis. *Id.*

Dr. Benson began treating Claimant on January 24, 2013. *See* R. 274-76. Claimant reported chronic, severe pain in his right knee. R. 274. Examination revealed hyper sensitivity, limited flexion and extension with moderate to severe pain, muscle atrophy, and no malingering. R. 274-76. Dr. Benson prescribed physical therapy. R. 276. Examinations in March, April, and May 2013, show similar reports of pain and findings of atrophy, swelling, and tenderness. R. 228-30, 265-76, 279-80. On March 22, 2013, Dr. Benson diagnosed a right knee sprain, tear of the lateral meniscus, internal derangement, and traumatic arthropathy. R. 224. He completed an Attending Physician's Report that same date in which he opined that Claimant would remain totally disabled through April 26, 2013. R. 230. In an April 23, 2013 report he extended the date of disability to May 23, 2013. R. 229. That same date, he noted that Claimant had "developed a blood clot postoperatively from the splinting and disuse of his leg" and thus updated his condition to include thrombophlebitis. R. 222. In May, he extended the disability estimate to July 23, 2013. R. 228.

In June and August 6, 2013 Work Capacity Evaluations, Dr. Benson opined that Claimant could work an eight-hour work day with the following restrictions: (1) no more than one hour walking; (2) no more than four hours standing; (3) no climbing or operating a motor vehicle; (4) lifting limited to twenty pounds; and (5) kneeling and squatting limited to half an hour each. R. 226-27. Although both forms include a space for stating the duration and frequency of needed breaks, Dr. Benson left those areas blank *See id.* In June 2013, he also stated that Claimant could have "no inmate contact due to inability to defend self." R. 227.

In November 2013, Dr. Benson stated that Claimant "continues to have deficits that include decreased range of motion, decreased strength, and inability to do some activities of daily living due to weakness in his right knee." R. 277. He thus recommended additional physical therapy. *Id.*

The next month, Robert Holladay IV, M.D., conducted a consultative examination at the request of the Department of Labor. R. 237-45. He recited Claimant's medical history with respect to his knee injury. R. 238-42. He opined that Claimant was restricted "in regards to climbing, crawling, stooping and twisting-type activities" and "would be restricted from walking for long distances on a continuous basis." R. 244. He completed a Work Capacity Evaluation in which he opined that Claimant could work an eight-hour work day with the following restrictions: (1) no more than eight hours sitting; (2) no more than four hours walking; (3) no more than four hours standing; (4) no climbing, twisting, bending, stooping, squatting, kneeling, or operating a motor vehicle; and (5) lifting, pushing, pulling limited to ten pounds. R. 247. He also indicated that Claimant would need breaks of "Routine" duration and unspecified frequency.[10] *Id.*

---

[10] Citing to a duplicate copy of this evaluation in the record, the Commissioner attributes it to Dr. Benson. *See* Def's Br. at 9 (citing R. 573). Dr. Holladay, however, completed the evaluation.

In January 2014, Dr. Benson stated that post-op rehabilitation therapy was medically necessary. R. 236. On April 14, 2014, Paul Marsh, D.O., conducted an MRI of Claimant's right knee. R. 231-32. The MRI examination showed various problems with his right knee. *Id.*

An unidentified physician completed a Functional Capacity Evaluation ("FCE") of Claimant on April 16, 2014.[11] R. 258-64. Based on objective testing, the physician found the following physical deficits: (1) decreased range of motion in right lower extremity; (2) "clinically-significant right-sided strength deficits"; (3) decreased muscle endurance; and (4) inability to maintain adequate postural tolerances with prolonged weight bearing ambulation. R. 262. The doctor also found functional deficits related to Claimant's right knee, including running, turning, squatting, lunging, and climbing stairs for a sustained period. *Id.* The doctor opined that Claimant would be unable to safely and completely perform his former job duties due to various limitations. *See* R. 263. The doctor completed a table that lists (1) required job duties; (2) required frequency of such duties, i.e., never, occasionally, frequently, or constantly; and (3) whether the Claimant demonstrated an ability to perform such duties. *See id.* The FCE indicates that Claimant had demonstrated no ability to constantly lift more than 51 pounds, frequently crawl, or constantly handle vibration. *See id.* It further indicates that Claimant had demonstrated only a limited ability to constantly lift between 21 and 50 pounds; frequently climb and kneel; constantly bend, pull, push, sit, squat, stand, twist, and work at high speeds; or occasionally walk. *See id.*

Claimant returned to Dr. Benson for examination on June 23, 2014, resulting in a Maximal

---

[11]The FCE has signature lines for Dr. Benson and Rudolph A. Theobald, D.C., but it is unsigned. *See* R. 264. In addition, the introductory paragraph states that Claimant had "been referred to Doctor, Theobald, DC" and that "Dr. Theobald requested to have an independent FCE performed." R. 258. While it appears most likely that Dr. Theobald conducted the FCE, it is unnecessary for the Court to definitively identify the physician.

Medical Improvement/Impairment Rating by the doctor. *See* R. 529-33. At that time, Claimant complained of "a functional inability to attain full strength in his right knee which limits his ability to utilize the lower extremity in the performance of activities of daily living and functional performance." R. 529. Dr. Benson recorded Claimant's surgical, diagnostic, and medical history with respect to his right knee. R. 531-32. Physical examination revealed decreased range of motion in the right knee, decreased strength, and atrophy in the right thigh. R. 530. Dr. Benson diagnosed right knee sprain, right knee lateral meniscus tears, right deep vein thrombosis ("DVT"), and right traumatic arthropathy of the lower leg. *Id.*

On August 4, 2014, Dr. Benson updated Claimant's case to include a dislocation of patella based on physical findings and his most recent MRI. R 528. By letter dated August 21, 2014, Dr. Benson restated his diagnoses for Claimant; the MRI findings from April 2014; and the FCE from April 16, 2014. R. 527. He opined that, due to the knee injury, Claimant "is unable to bend, stoop, twist, or do prolonged walking or standing." *Id.* He thus recommended Claimant as a candidate for disability retirement. *Id.*

A year later, Dr. Benson completed a Disability Impairment Questionnaire in which he detailed Claimant's impairments and resulting limitations. R. 609-12. He restated his diagnoses and identified clinical and laboratory findings that support them, including the April 2014 MRI and January 2013 operative report. R. 609. He stated that Claimant was not a malingerer and opined that his ongoing impairments were expected to last at least twelve months. *Id.* He opined that Claimant could sit six or more hours and stand/walk for four hours in an eight-hour workday, but while sitting, Claimant would need to elevate his right leg no higher than waist level for five minutes every hour. R. 610. He opined that Claimant could lift/carry up to twenty pounds occasionally and ten or less

pounds frequently. *Id.* He further opined that Claimant's "pain, fatigue, or other symptoms" would frequently interfere i.e., "from 1/3 - 2/3 of an 8-hour workday," with Claimant's attention and concentration, R. 611. In addition, he stated that Claimant would need to take unscheduled rest breaks for five minutes every sixty minutes. *Id.* In his medical opinion, Claimant's symptoms and related limitations had existed since January 3, 2013. R. 612.

While not specifically labeling Dr. Benson as a treating physician, the ALJ undoubtedly recognized that status. *See* R. 18-20. The ALJ did not discuss whether his opinions were entitled to controlling weight, but gave "significant weight" to opinions contained within the August 2015 Disability Impairment Questionnaire. R. 20. The ALJ, however, found no support in the medical record for Dr. Benson's opinions that Claimant would require hourly breaks and that his symptoms would frequently interfere with attention and concentration. *Id.* In evaluating Dr. Benson's opinions, the ALJ expressly stated that he "considered the length, nature and extent of the treating relationship, the frequency of examinations, the supportability by other evidence given by the medical source, the extent of his explanation, and the consistency with the record as a whole." *Id.*

Because the ALJ did not give controlling weight to the opinions of Dr. Benson, *Newton* requires consideration of the six factors of § 404.1527(c) to properly assess the weight of those opinions. While the ALJ did not recite all six factors, he specifically listed factors 2, 3, and 4 while also recognizing that Dr. Benson was an examining physician (factor 1). Because Dr. Benson is not a specialist, the fifth factor holds no special importance in this case. Similarly, nothing of record indicates that other factors brought to the ALJ's attention (factor 6) impact the weight given to Dr. Benson's opinions. Overall the ALJ decision reflects consideration of all relevant factors and the ALJ stated good reasons for accepting some and rejecting other opinions of Dr. Benson. The ALJ

13

properly recognized that the Disability Impairment Questionnaire set out numerous medical opinions of Dr. Benson and he found no support for two opinions.

On the record before the Court, good cause exists to reject the two opinions of Dr. Benson while giving significant weight to his other opinions. Opinions that are brief and conclusory may provide good cause to disregard the opinion of a treating source. *Perez v. Barnhart*, 415 F.3d 457, 466 (5th Cir. 2005). Furthermore, "the 'questionnaire' format typifies 'brief or conclusory' testimony." *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (per curiam). After considering the factors of § 404.1527(c), the ALJ in this case was justified in rejecting the two opinions of Dr. Benson. The Court should find that the ALJ did not err in the weight assigned to the opinions of Dr. Benson, including the rejection of two of opinions. In addition, substantial evidence supports the ALJ's stated reasons for rejecting the two opinions. A review of the medical record as a whole supports the weight assigned to the opinions of Dr. Benson. Claimant's first asserted error provides no basis for reversing the decision to deny benefits.

## B. Credibility Determination[12]

Claimant also argues that the ALJ improperly evaluated his credibility. Pl.'s Br. 11-13. He argues that substantial evidence does not support the credibility determination. *Id.* at 13. Claimant testified that he is unable to work due to swelling in his leg from his DVT history that requires it be elevated. R. 38. He testified that his knee impairment got worse after the January 2013 surgery. R.

---

[12]Effective March 16, 2016, the Social Security Administration eliminated "use of the term 'credibility' from [its] sub-regulatory policy" and in doing so, clarified "that subjective symptom evaluation is not an examination of an individual's character." Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2016 WL 1020935, at *1 (S.S.A. Mar. 16, 2016). When the ALJ issued his decision, SSR 96-7p was the relevant social security ruling and specifically used the term "credibility." *See* Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996).

39-40. He explained that it was worse due to "constant pain" and its flexibility. R. 40. He testified that he cannot be on his feet for more than an hour before he needs to sit down due to swelling and that he can sit for "[n]o more than an hour or so" before needing to get up and move around. R. 40-41. He further testified that he elevates his leg to chest level to relieve swelling per orders from Dr. Benson. R. 41.

The Social Security Administration has a specific regulation that explains how it evaluates symptoms, including pain. *See* 20 C.F.R. § 1529 (effective June 13, 2011, through Mar. 26, 2017). In general, when determining whether an individual is disabled, it considers all of the individual's "symptoms, including pain, and the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* § 1529(a). The regulation creates a two-step process for evaluating symptoms. *See id.* § 1529(b) and (c). The ALJ must first determine whether the claimant has medically determinable impairments that could reasonably be expected to produce the alleged symptoms. *Id.* § 1529(b).

Next, the ALJ must "evaluate the intensity and persistence of [alleged] symptoms" so as to determine how the symptoms limit the claimant's capacity for work. *Id.* § 1529(c)(1). This evaluation requires the ALJ to consider the objective medical evidence as well as other evidence relevant to the claimant's symptoms, including (i) the claimant's daily activities; (ii) the "location, duration, frequency, and intensity" of the pain or symptoms; (iii) factors that precipitate and aggravate the symptoms; (iv) the claimant's medications and their dosage, effectiveness, and side effects; (v) other non-medicinal treatment for relief of symptoms; (vi) other measures taken to relieve symptoms; and (vii) other factors concerning the claimant's functional limitations and restrictions resulting from the symptoms. *See id.* § 1529(c)(2) and (3).

Because evaluation of a claimant's symptoms may require findings about the credibility of an individual's statements about pain, other symptoms, and their functional effects, the Social Security Administration issued SSR 96-7p "to clarify when the evaluation of symptoms" requires such a finding. *See* Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996). SSR 96-7p emphasizes several aspects of the regulations, including the seven factors, and explains that a "symptom is an individual's own description of his or her physical or mental impairment(s)." *Id.* at *1-3. An ALJ's

> determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

*Id.* at *4. The following guidelines aid ALJs in making their credibility findings: (1) consistency of the symptoms with respect to the medical record and the individual's own statements is a strong indicator of credibility; (2) although clinical or laboratory diagnostic techniques cannot objectively measure symptoms, effects of symptoms "can often be clinically observed" and the medical record may contain important information about symptoms; (3) a claimant's medical treatment history may provide support for alleged symptoms; (4) other sources of information may provide information from which an ALJ may make inferences or draw conclusions about a claimant's credibility; (5) observations of the ALJ or other persons may impact the credibility finding; and (6) ALJs must explain the weight given to credibility findings of agency consultants and other medical sources. *Id.* at *5-8.

In this case, the ALJ recognized the two-step process for considering a claimant's symptoms. R. 17. He identified and considered Claimant's testimony before summarizing the medical record. R. 17-18. He then succinctly applied the two-step process by finding that Claimant's "medically

determinable impairments could reasonably be expected to cause some of the alleged symptoms," while also finding Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." R. 18.

More specifically, with respect to Claimant's allegations of "right lower extremity pain, swelling, and limited movement," the ALJ found his knee surgery and DVT could reasonably be expected to cause the alleged symptoms, but found the allegations "not entirely credible or reasonably supported by the findings of the objective medical evidence or inferences therefrom." *Id.* He found Claimant not entirely credible because (1) objective evidence does not support his level of pain and resulting limitations; (2) he testified that his knee impairment had worsened since his January 2013 surgery even though he had reported improvement to Dr. Haenke; (3) hematology treatment records do not reflect significant swelling since his January 2013 DVT; (4) he reported that medication causes bruises and spots in one report while denying medication side effects in other reports; and (5) according to "his most recent medication list," he is "no longer taking medication for pain." R. 18-19.

Following these reasons for finding Claimant not entirely credible, the ALJ set out his RFC assessment. R. 19. He then recognized that Claimant "may experience some degree of pain or discomfort at times of overexertion, but even a moderate level of pain is not, by itself, incompatible with the performance of certain levels of sustained work activity." *Id.* He noted that the medical "record contains no objective signs of an incapacitating impairment, such as muscle atrophy or grossly abnormal neurological deficits." *Id.* He further noted a disagreement between Claimant's testimony about elevating his leg to chest level and a recommendation for a lower elevation from Dr. Benson. *Id.* The ALJ also stated that Claimant could "care for his personal needs without difficulty,

do light household chores, drive, and go to the store." *Id.* In addition, he noted Claimant's "steady work record" and the fact that his impairments ended his prior job. *Id.*

Courts accord "great deference" to an ALJ's credibility assessment when substantial evidence supports it. *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000); *accord Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). While given circumstances may require ALJs to state specifically their reasons for finding subjective complaints not credible, they are not required to follow any formalistic rule or language. *See Falco v. Shalala,* 27 F.3d 160, 163-64 (5th Cir. 1994). In this case, the ALJ stated specific reasons for finding Claimant's subjective symptoms not credible and the Court should find substantial evidence to support that credibility assessment.

Claimant contends that the ALJ failed to identify what objective evidence the ALJ found inconsistent with his symptoms and, citing 20 C.F.R. § 1529(c)(2) and SSR 96-7p, Claimant contends that ALJs cannot solely rely on the objective medical evidence to discredit his alleged symptoms. *See* Pl.'s Br. at 13. The ALJ, however, did identify and discuss the medical record as it relates to Claimant's knee impairment while also stating other reasons for finding Claimant not entirely credible. The ALJ did not rely solely on objective evidence in making his credibility determination.

Claimant also contends that, although he had some improvement following his knee surgery, the medical record documents that his pain returned and a second surgery has been contemplated. Pl.'s Br. at 13. As a whole, the medical record does indeed reduce or eliminate the ALJ's perceived inconsistency between Claimant's statement to Dr. Haenke that his condition had improved as of April 24, 2013, (R. 486), and his October 30, 2015 testimony that his knee impairment was worse after the surgery (R. 39-40). However, even eliminating this reason for finding Claimant not entirely credible should not alter the Court's finding of substantial evidence to support the credibility deter-

mination.

Citing five medical records, Claimant next contends that the record "directly contradicts the ALJ's finding that [he had] not had any swelling his right leg since January 2013." Pl.'s Br. at 13. This contention misstates the ALJ's reasoning in two important respects. First, the ALJ specifically limits the reason to "hematology treatment records" and in his summary of the medical evidence he identified Mary Milam, M.D., as a hematologist. R. 18-19. Second, the ALJ specifically stated that the records do not reflect "significant swelling." R. 19. Claimant identifies no hematology records that contradict the ALJ's reasoning. He instead identifies three records of Dr. Haenke from February, March, and April 2013 (R. 251, 486-87, 513); a record of Dr. Benson from March 2013 (R. 279); and a record from a workers compensation physician, Kevin Williams, M.D., who noted "diffuse soft tissue swelling" around right knee in May 14, 2014, (R. 293). None of these records necessarily indicate significant swelling. In fact, Dr. Haenke noted a "trace of swelling" in February 2013, R. 251, and swelling around incisions in March and April 2013, R. 487, 513. In his March record, he noted that Claimant's "peri-incisional swelling is typical" and "will be there 2 months more" before resolving." R. 513. Dr. Milam treated Claimant's DVT and it is noteworthy that her records do not indicate any significant swelling after January 2013. *See, generally*, R. 317-400. In fact, she specifically states "no edema" in July and October 2013, R. 324, 332; January, April, July, and October 2014, R. 318, 322, 355, 375; and January, April, and July 2015, R. 364, 369, 372. Claimant does not identify any record of Dr. Milam that contradicts the reasoning of the ALJ and a review of her records reveals none. The record supports this reason for discounting Claimant's subjective statements regarding the severity of his symptoms.

Claimant concedes that Dr. Benson did not recommend elevating his leg to chest level, but

19

argues that the minimal discrepancy does not warrant discounting all of his statements about his conditions. Pl.'s Br. 13. Finally, Claimant contends that the fact that he can perform some activities of daily living for short periods does not mean that he can work eight hours a day, forty hours a week. *Id.* The ALJ decision does not reflect that he entirely discounted Claimant's statements based on the discrepancy in elevation height. Nor does the decision reflect that the noted activities of daily living solely resulted in discounting Claimant's statements of symptoms.

Substantial evidence supports the ALJ's credibility finding and his decision reflects consideration of most of the factors set out in SSR 96-7p, and 20 C.F.R. § 404.1529. To the extent the ALJ may have failed to comply with SSR 96-7p, such error is subject to harmless error analysis, *see Nall v. Barnhart*, 78 F. App'x 996, 997 (5th Cir. 2003) (per curiam), and any such error appears harmless under the circumstances. Any such error in this case does not cast into doubt the existence of substantial evidence to support the ALJ's credibility determination. Because substantial evidence supports the credibility determination even with the alleged error, the determination is entitled to judicial deference. *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). Claimant's second asserted error provides no basis to reverse the Commissioner's decision.

## IV. CONCLUSION

For the reasons set forth in this Report and Recommendation, the Court should find that substantial evidence supports the decision to deny benefits and that no error justifies reversal and remand. The undersigned thus **RECOMMENDS** that the district court **AFFIRM** the Commissioner's decision to deny benefits. Because the parties have not consented to proceed before a United States Magistrate Judge, the undersigned directs the Clerk of Court to **REASSIGN** this case to Senior District Judge Sam R. Cummings in accordance with Second Amended Special Order No.

3-301.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED this 28 day of August, 2017.**

**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**